IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  )
    Plaintiff,  )
    v.  )    CR. N0. 06-263
       (Civil Action No. 2:08-cv-1589)
DEREK MCCLELLAN,  )
    Defendant.  )

## OPINION & ORDER

Before the Court is Petitioner Derek McClellan's Motion to Vacate under 28 U.S.C. 2255 filed at Criminal No. 06-263 (Doc. 123), and assigned Civil Action No. 08-1589.

### I. Background

A federal grand jury indicted the defendant with Conspiracy to Distribute and Possess With Intent to Distribute 500 grams or more of Cocaine, in violation of 21 U.S.C. § 846 (Count I); Possession With Intent to Distribute 500 grams or more of Cocaine, in violation of 21 U.S.C. § 81(a)(1) and 841(b)(1)(B)(ii); and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1). Mr. McClellan retained Ralph Karsh, Esquire, to represent him in this matter. Mr. Karsh filed numerous pretrial motions on behalf of Mr. McClellan, and was planning on filing a Motion to Suppress after he had received all necessary evidence from the government. However, on February 27, 2007, Mr. Karsh filed a Motion to Withdraw as Attorney, explaining that the attorney-client relationship had irretrievably broken down because, among other things, Mr. McClellan had accused Mr. Karsh of conspiring with the government and had filed a complaint against Mr. Karsh with the Disciplinary Board of the Supreme Court of Pennsylvania. The Court granted the motion, and Stephen Begler, Esquire, was appointed as Mr. McClellan's counsel.

Mr. Begler filed a Motion to Suppress, which included a motion to suppress evidence obtained as a result of electronic surveillance and a motion to suppress evidence seized pursuant to a search warrant. A suppression hearing was held on June 6, 2007, at which testimony and evidence were taken. The Court denied the motions to suppress, and a trial date was set.

Before trial, Mr. Begler filed a motion to appoint an expert to re-weigh the drug evidence in this case, which the Court granted. The parties filed proposed jury instructions, voir dire, and points for charge, and trial was set to begin on October 15, 2007. Three days before trial was set to begin, Mr. Begler filed a motion to dismiss Count Three, possession of a firearm. On the same date, Mr. McClellan filed a "Motion to Disqualify Attorney and Motion for Appointment of New Counsel, Conflict of Interest." (Doc. 95.)

On October 15, 2007, the day of trial, Mr. McClellan agreed to enter a plea of guilty as to Counts One and Three of the indictment. Prior to conducting the plea colloquy the Court denied Mr. McClellan's motion to disqualify his counsel, stating as follows:

> I'm unwilling to do that [dismiss Mr. Begler], Mr. McClellan. Mr. Begler represented you at the suppression hearing last June. I thought he did an admirable job in doing that. The general law, with respect to ineffectiveness of counsel, is if counsel does something that is so bad that the case would have gone the other way if he had represented the defendant properly. Now, certainly, although I denied the motion to suppress, he did a very good job. It was a difficult case. I'm simply unwilling to dismiss him at this late date.

(Transcript of Change of Plea, October 15, 2007, at 3.)[1] Mr. McClellan plead guilty to Counts One and Three pursuant to a plea agreement that included a waiver of collateral rights provision. The Court conducted a plea colloquy with Mr. McClellan and accepted Mr. McClellan's guilty plea.

---

[1] Because Mr. McClellan plead guilty there was no need for the Court to rule on the motion to dismiss Count Three. We note, however, that the issues argued by Defendant, that he had no knowledge of the firearms and did not possess the firearms, were matters of fact for the jury to decide.

On January 14, 2008, Mr. McClellan acting on his own filed a document entitled Withdrawal of Plea (Doc. 103). On January 17, 2008, Mr. Begler filed a separate Petition to Withdraw Plea (Doc. 104). The two motions were substantially different.

In Mr. McClellan's pro se motion he sought to have Mr. Begler removed as his counsel, asserting a conflict of interest because he had previously filed a motion to disqualify Mr. Begler, which the Court denied. He further argued that Mr. Begler was ineffective in several ways: he did not try to reserve Mr. McClellan's appellate rights under 28 U.S.C. § 2255 in his plea agreement, he did not ask for a pre-Presentence Report, he did not communicate a counter-offer, and he gave Mr. McClellan erroneous advice to induce Mr. McClellan to accept the plea agreement. Finally, Mr. McClellan asserted that Mr. Begler failed to argue the issue of the weight of the drugs.

In Mr. Begler's Petition to Withdraw Plea, he argued that permitting Mr. McClellan to withdraw his plea would be fair and just because he did not contemplate that he would be subject to an eight year period of supervised release, as indicated in the Presentence Report.

On February 19, 2008, prior to the sentencing hearing we denied both motions to withdraw Mr. McClellan's plea, reading from a written opinion and order that was subsequently filed. (Transcript of Sentencing Hearing, February 19, 2008, at 3-12; Opinion and Order, Doc. 111.)

Based on an offense level of 25 and a criminal history of II, Mr. McClellan's guideline sentencing range was determined to be 63 to 78 months' imprisonment. However, Mr. McClellan faced a statutory minimum sentence of 120 months to life imprisonment at Count One, and a statutory maximum sentence of 120 months' imprisonment at Count Three. On February 19, 2008, Mr. McClellan was sentenced to 120 months' imprisonment at Count One and 120 months' imprisonment at Count Three, to be served concurrently, to be followed by 8 years' supervised release at Count One, and two years' supervised release at Count Three, to be served concurrently.

3

Mr. McClellan timely filed an appeal, which is pending before the United States Court of Appeals for the Third Circuit. On November 18, 2008, Mr. McClellan timely filed a motion to vacate under section 2255, in which he raises two claims of ineffectiveness of counsel. First, he argues that his counsel failed to inform him of the discrepancy in the plea agreement between the amount of cocaine to which he admitted versus the amount indicated in the Presentence Report. (Memorandum of Law in Support of Motion to Vacate, at 5-7, attached to Motion to Vacate under 28 U.S.C. 2255.) In Mr. McClellan's second claim he argues that his counsel incompetently advised him to plead guilty to an offense supported by evidence seized in violation of the Fourth Amendment. (Memorandum of Law in Support of Motion to Vacate, at 8-11.)

## II. Standard of Review under 28 U.S.C. §2255

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916. Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

*Evidentiary Hearing*

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly

4

frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

We find no need for an evidentiary hearing as the record conclusively establishes that the Mr. McClellan is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

## III. Discussion

Mr. McClellan has filed a motion to vacate despite agreeing in his plea agreement to waive the right to file such a motion. The government argues that Mr. McClellan's waiver be enforced, and his motion dismissed. Accordingly, we must first address whether Mr. McClellan's waiver of his right to file a motion pursuant to section 2255 is enforceable.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001), citing United States v. Mezzanatto, 513 U.S. 196, 201 (1995). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008), citing Khattak, 273 F.3d at 561.

We have "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine the "(1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." Mabry, 536 F.3d at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238 (citing Khattak, 273 F.3d at 563.)

5

## A. Knowing and Voluntary Nature of the Waiver

With regard to whether the waiver was knowing and voluntary we must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." Mabry, 536 F.3d at 239.

Pursuant to the plea agreement Mr. McClellan agreed to waive his right to take a direct appeal, except that he was permitted to take a direct appeal limited to whether the Court erred in failing to suppress evidence. (Plea Agreement, ¶ A.10.(a), doc. 99.) The parties also agreed that Mr. McClellan could appeal if the United States appeals from the sentence, or if the sentence exceeds the statutory limits or unreasonably exceeds the guideline range. (Plea Agreement, ¶¶ A.10.(b) & (c).) Mr. McClellan also agreed to waive his right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence. (Plea Agreement, ¶ A.10.) Mr. McClellan signed the plea agreement acknowledging that he understood the terms of the agreement. We find the terms of the plea agreement to be sufficient and clear with regard to the waiver of collateral rights.

The knowing and voluntary nature of Mr. McClellan's waiver was reinforced during the plea colloquy. We are assisted in our examination in that we have previously considered our plea colloquy when addressing Defendant's two motions to withdraw his plea (doc. nos. 103 & 104) filed just prior to sentencing. In our opinion we stated as follows:

> During the plea colloquy Mr. McClellan was determined to be competent to plead. (Transcript of Plea Hearing, October 15, 2007, at 5.) The Court explained to him what his rights would be if he went to trial. (Id. at 6-8.) Both Counts One and Three of the Indictment were read to Mr. McClellan, as well as what the government would have to prove at trial with respect to each charge. (Id. at 9-12.) As to Count One, we explained in detail what the government would have to prove to establish a conspiracy. (Id. at 14-15.)
> We also explained the penalties Mr. McClellan would be subject to, in particular we noted that because of the government's filing of a notice pursuant to 21 U.S.C. § 851 indicating the present offense is a second narcotics conviction, that the statutory penalties calls for a term of not lass than 10 years to a maximum of life, a fine not to exceed $4 million, and a term of supervised release of at least eight years. (Id. at 12-14.) When we asked Mr. McClellan if he understood the penalties, and he responded by asking, "Minimum is going to be 10 years." (Id. at

6

13.) The Court responded by stating, "It says it's got to be at least 10 years. I'm willing to make it 10 years. You understand?" (Id.) Mr. McClellan stated, "I understand." (Id.) In addition, the terms of the Plea agreement that Mr. McClellan signed clearly stated that the government and Mr. McClellan agree that he was subject to a "term of supervised release of eight (8) years." (Plea Agreement, Gov. Ex. 1, at C.1.(c)).

The terms of the plea agreement were explained to Mr. McClellan. (Id. at 17-20.) In response, Mr. McClellan's only comment was a question regarding the government's filing of a notice pursuant to 21 U.S.C. § 851, asking "is that going to double the 10-year sentence . . . ." (Id. at 21.) His counsel explained that as far as any doubling went, the 851 notice doubled the minium 5 years' imprisonment required by statute, to a minimum of 10 years' imprisonment, to which Mr. McClellan stated "I understand." (Id. at 21.) **In particular, it was explained to Mr. McClellan that the Plea Agreement he was entering into included the right to appeal the denials of his suppression motions, the waiver of the right to file a motion to vacate sentence under 28 U.S.C. § 2255, and an agreement that the amount of cocaine in this case was at least 500 grams and less than two kilograms.** (Id. at 17-19.)

The government also set forth in detail what it expected to prove had it went to trial that day. (Id. at 21-28.) The Court asked Mr. McClellan if it "was a fair statement of what happened here," and Mr. McClellan stated, "Yes." (Id. at 28.)

(Opinion and Order, February 20, 2008, at 4-5 (emphasis added).) At that time we concluded that Mr. McClellan had failed to present a fair and just reason to permit him to withdraw his guilty plea, however, in reaching our conclusion we necessarily concluded that Mr. McClellan's plea was knowing and voluntary.

We would add to our examination of the colloquy that we also asked Mr. McClellan if "any out-of-court promises, representations or agreements been made which require you to respond untruthfully to any of my questions? For instance, has anyone told you to tell me that no promise of leniency was made when, in fact, a promise of was so made? (Tr. of Change of Plea, at 15.) Mr. McClelland responded by answering, "No." (Id. at 16.) We further asked:

> Do you understand that you may not at a later date after today claim that there were any promises, representations or agreements, understanding or threats made by any person that motivated or caused you to enter this plea other than those that you had the opportunity to tell me about here and now in open court?
> Do you understand that?

(Id.) Mr. McClellan responded, "I understand." (Id.)

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that "[b]efore accepting a plea of guilty" the district court must "inform the defendant of, and determine that the defendant

7

understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." For purposes of the present analysis we find that Mr. McClellan's guilty plea was knowing and voluntary and that specifically, his waiver of his collateral rights was knowing and voluntary.

We note also that at sentencing, Mr. McClellan briefly addressed his guilty plea, referring to arguments he had set forth in his motion to withdraw his plea (doc. 103). He stated:

> I said all the things on the plea agreement and whatnot, but a lot of that I did not receive 'til the day that that came; so it was - - at that time that I had to make a decision based on my whole life, you know what I mean? And it wasn't 'til I seen the PSI personally that I understood because up until that point I understood that it was a 500-gram conspiracy, not a 250-gram.
> That's the only reason I put an objection into that, because I did plead guilty. but I - - I was under - - under - - I was made to understand that I was - - it was a 500-gram conspiracy, not a 250. So when I received the PSI, to understand that it was really - - that's why I made - - I mean the Court's going to do what they feel regardless.

(Tr. of Sentencing Hearing, at 22-23.) Mr. McClellan thus averred that his plea was not knowing in that he did not know that the conspiracy he was charged with concerned 250 grams of cocaine. Instead, he thought he was charged with 500 grams, and it was that amount that he agreed to plead guilty to. Mr. McClellan argues that had he known that he was only charged with 250 grams of cocaine, he would not have plead to 500 grams of cocaine. This is the same argument he now raises in his section 2255 petition.

In his motion to withdraw his plea, Mr. McClellan stated that he was "advised to plea to 500 grams but factually stated in PSR to (250 grams) '9 ounces.'" (Withdrawal of Plea, Doc. 103, at 2.) In his section 2255 petition, Mr. McClellan specifically cites to the Presentence Investigation Report at paragraph 5 as the factual basis for his understanding that he was only charged with 250 grams. Paragraph 5 states in relevant part, as follows:

> The defendant's federal indictment and conviction for the instant offenses are the result of an investigation initiated by agents with the Federal Bureau of Investigation (FBI), Pennsylvania Attorney General's Office; Bureau of Narcotics Investigation (BNI), and local law enforcement. Authorities suspected the defendant of having been involved in the distribution of cocaine, and they had intercepted a telephone call between the defendant and [another person] on November 3, 2005, negotiating the sale of 9 ounces of cocaine. . . . .

8

(Presentence Investigation Report, at ¶ 5.) Paragraph 5 is part of the PSI's "Offense Conduct" section and is not a recitation of the charges against the defendant, but is instead a description of the offense conduct.

The PSI goes on to explain that a search warrant was executed at Mr. McClellan's residence on November 17, 2005, and that agents seized, among other items, firearms, heroin, and a brick of cocaine weighing 506 grams. (PST, at ¶¶ 6-8.) In Count One of the Indictment, Mr. McClellan was charged with a conspiracy involving 500 grams or more of cocaine. The 9 ounces, or approximately 250 grams, mentioned in paragraph 5 was merely a recitation of telephone conversations describing a potential sale of cocaine. Eventually, however, Mr. McClellan was indicted based on the actual cocaine seized from his residence, not the amount that was offered for sale during the November 3, 2005 telephone conversation.

Perhaps we should have explicitly addressed Mr. McClellan's misunderstanding at sentencing in that he continues to believe that the conspiracy involved 250 grams of cocaine. As stated Count One of the indictment clearly charges the Defendant with a conspiracy involving 500 grams or more of cocaine. The conspiracy never concerned 250 grams of cocaine. Mr. McClellan's failure to understand that he was not charged with a 250 gram conspiracy does not negate his voluntary and knowing plea to a conspiracy involving 500 grams of cocaine. Mr. McClellan always thought he was pleading to a 500 gram conspiracy, and in fact, he did.

### B. Miscarriage of Justice

We next address whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. We are to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242, 243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. However, the Third Circuit Court has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "'the clarity of the error, its gravity, its character (e.g., whether

it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . . .'" Id. at 242-243, quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001).

Mr. McClellan argues that the fact that he has alleged ineffectiveness of counsel is enough on its own to establish a miscarriage of justice. (Petitioner's Reply to Government's Response, at 1-2.) Mr. McClellan cites as support for his position United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007) and United States v. Quiles Gonzalez, 2007 WL 2407288 (E.D.Pa. 2007)).

In Shedrick, the Court found a miscarriage of justice and so did not enforce the collateral attack waiver set forth in the plea agreement. In Shedrick, defense counsel had failed to file an appeal that the defendant had instructed counsel to file concerning an issue that the defendant "had explicitly preserved in his plea agreement and colloquy: the propriety of [an] upward departure." Shedrick, 493 F.3d at 303. The Third Circuit Court explained,

> At its essence, Shedrick's argument is that, as a result of counsel's deficient performance, he (1) failed to understand the full effect of his guilty plea as it related to upward departures, and (2) failed to timely appeal the District Court's upward departure, which he was entitled to appeal under the express terms of the plea agreement waiver.

Shedrick, 493 F.3d at 298. Under these circumstances, the Court concluded that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented Shedrick from understanding his plea or from filing a direct plea agreement would result in a miscarriage of justice." Id.

In Quiles Gonzalez, the District Court read Shedrick to "suggest[] that the Third Circuit is likely willing to adopt the Seventh Circuit's ineffective-assistance-constituting-miscarriage-of-justice reasoning in the context of collateral-attack waivers." Quiles Gonzalez, 2007 WL 2407288, *2 (referring to United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) ("ineffective assistance of counsel qualifies as a miscarriage of justice sufficient to overcome a waiver-of-

appeal provision."). The District Court explained that it read Shedrick as holding that "a collateral-attack waiver should not be enforced if a habeas petitioner has alleged potentially viable ineffective-assistance-of-counsel claims, since refusing to consider and to remedy such claims, if true, would result in a miscarriage of justice." Id. at *3. The District Court later used more narrow language explaining that "under Shedrick, the Court should not enforce a collateral-attack waiver in the face of allegations that constitutionally deficient lawyering may have prejudiced the habeas petitioner, including allegations that ineffective assistance may have caused the petitioner to enter a guilty plea that he did not understand or fully appreciate." Id., citing Shedrick, 493 F.3d at 298. In not enforcing the petitioner's collateral attack waiver the Quiles Gonzalez Court "err[ed] on the side of caution" in light of the "absence of a more clear dictate" from the Third Circuit Court of Appeals. Id.

In Mabry, decided after Quiles Gonzalez the Third Circuit Court of Appeals has provided a more clear dictate. It is now clear that the mere allegation of ineffectiveness of counsel will not automatically invalidate a knowing and voluntary waiver of a collateral attack. Mabry, 536 F.3d at 243.

In Mabry the defendant filed a section 2255 petition claiming that his counsel was ineffective in failing to file an appeal even though Mabry had asked his counsel to file such an appeal. The Mabry Court explained that Shedrick held that it would be a miscarriage of justice to enforce a waiver of a collateral attack that would result in barring an appeal *expressly preserved in the plea agreement*, a circumstance not present in Mabry's case. Mabry, 536 F.3d at 243, construing Shedrick. All four issues Mabry wanted to raise on appeal were found to be "insubstantial and clearly encompassed by the broad waiver." Mabry, 536 F.3d at 243. In addition, Mabry did not allege that his "counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver." Mabry, 536 F.3d at 243. The Mabry Court thus concluded that enforcement of the collateral attack waiver would not work a miscarriage of justice even though Mabry had raised the ineffectiveness of his counsel. Mabry, 536 F.3d at 243.

11

We likewise find that enforcing the waiver in this case does not result in a miscarriage of justice. The waiver in this case is broad and admits of no exceptions. It reads as follows:

> Derek McClellan further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Plea Agreement, at A.10.)

Mr. McClellan's case is not similar to Shedrick. He does not allege that his counsel failed to file an appeal of an issue that was expressly preserved in the plea agreement. To the contrary, counsel did file an appeal that is currently pending on an issue that was preserved in the plea agreement.

In his 2255 petition Mr. McClellan alleges his counsel was ineffective in failing to inform him of the discrepancy between the 500 grams of cocaine to which he plead guilty, versus the 250 grams mentioned in paragraph 5 of the Presentence Report. He also alleges that his counsel incompetently advised him to plead guilty to an offense supported by evidence seized in violation of the Fourth Amendment, in other words he alleges that his counsel was ineffective in failing to file a suppression motion objecting that the search warrant was an invalid "general warrant" that failed to particularly authorize the seizure of firearms.

Both of the issues Mr. McClellan asserts are "insubstantial and clearly encompassed by the broad waiver." Mabry, 536 F.3d at 243. At best, Mr. McClellan argues that his counsel was ineffective in negotiating the plea agreement that contained the waiver, but this argument fails. Before pleading guilty to the charges in the Indictment, the provisions of the plea agreement, specifically the waiver provision, were read to Mr. McClellan in open court. He knowingly and voluntarily agreed to the waiver. Moreover, the evidentiary discrepancy that he claims existed did not in fact exist. His counsel did not inform him that he was pleading to 500 grams of cocaine when in fact the conspiracy only involved 250 grams of cocaine because that was not true.

Finally, his argument that his counsel should have filed a motion to suppress based on an illegal "general warrant" that did not specify that firearms could be seized in addition to drugs is frivolous. The search warrant was particularized in nature and fully supported by probable cause. The seizure of firearms in a narcotics case such as this falls within the scope of the warrant and was proper. Enforcing the collateral attack waiver in the plea agreement does not result in a miscarriage of justice.

Having found that Mr. McClellan knowingly and voluntarily waived his rights to file a collateral attack of his sentence and conviction, and that enforcement of the waiver does not work a miscarriage of justice, we will deny Mr. McClellan's petition.

### C. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000). We find that jurists of reason would not find it debatable whether Mr. McClellan states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## IV. Conclusion

Mr. McClellan's section 2255 motion will be denied, and a certificate of appealability will not be issued.

Accordingly, the following order is therefore entered.

AND NOW, to-wit, this __14th__ day of January, 2009, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 123), be and hereby is DENIED.

2. The court declines to issue a Certificate of Appealability.

Maurice B. Cohill, Jr.
United States District Court Judge

cc: Derek McClellan, pro se
No. 09047-068
FCC- Butner
FCI BUTNER MEDIUM II
P.O. Box 1500
Butner, N.C. 27509

counsel of record

14